# EXHIBIT A

 COPY

IN THE CIRCUIT COURT FOR DAVIDSON COUNTY
TWENTIETH JUDICIAL DISTRICT OF TENNESSEE

| | |
|---|---|
| **DOROTHY HANDLEY-MILEY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. _____ |
| ) | **JURY DEMAND** |
| **GREYHOUND LINES, INC.** and ) | |
| **FIRSTGROUP SERVICES, INC.,** ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Comes the Plaintiff, Dorothy Handley-Miley, and for her cause of action against the Defendants would respectfully show to the Court and Jury as follows:

### I. The Parties

1.1 The Plaintiff, Dorothy Handley-Miley, is a resident of Nashville, Davidson County, Tennessee.

1.2 The Defendant, Greyhound Lines, Inc., is, upon information and belief, a foreign, for-profit corporation organized in Delaware, with its principal office at 350 N. Saint Paul Street, Dallas, Texas 75201, doing business in Nashville, Davidson County, Tennessee, and may be served through its registered agent, C T Corporation System, 300 Montvue Road, Knoxville, Tennessee 37919.

1.3 The Defendant, FirstGroup Services, Inc., is, upon information and belief, a foreign, for-profit corporation organized in Delaware, with its principal office at 112 S. French Street, Suite 105, Wilmington, Delaware 19801, doing business in Nashville,

 COPY

Davidson County, Tennessee, and may be served through its registered agent, Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203.

## II. Jurisdiction

2.1  Because this is a tort action for unliquidated damages, the Circuit Court has subject matter jurisdiction of this action pursuant to Tenn. Code Ann. §16-10-101.

## III. Venue

3.1  This is a transitory action. The events which give rise to this complaint occurred in Davidson County, Tennessee. Consequently, venue is established in Davidson County, Tennessee, pursuant to Tenn. Code Ann. § 20-4-101.

## IV. Factual Statements

4.1  On October 10, 2021, Ms. Handley-Miley was at the Greyhound bus station in Nashville, Tennessee after having taken one of Defendant Greyhound Lines, Inc.'s busses from Montgomery, Alabama.

4.2  Upon information and belief, the Greyhound bus station in Nashville, Tennessee located at 709 Rep. John Lewis Way South is owned by Defendant FirstGroup Services, Inc. and operated, occupied, and/or maintained by Defendant Greyhound Lines, Inc.

4.3  Outside the Defendants' bus station, the property connects to the public sidewalk mainly via a sloped surface except for one portion that connects via a single-step transition.

4.4  At night, the single-step transition is illuminated via indirect lighting from lights atop a series of poles.

4.5   The illumination from these poles is insufficient to produce at least one(1) foot-candle at the walking surface of the single-step transition.

4.6   The lights are not directed down to the walking surface and, instead, are directed towards the pedestrian which creates a significant glare into a pedestrian's eyes.

4.7   The single-step transition is uniform in color with the surrounding walking surfaces and is not marked with any contrasting colors nor is there any signage to alert pedestrians of the presence of the single step.

4.8   The single-step transition is approximately five and one-half (5 ½) inches high.

4.9   Changes in elevation less than six inches generally should be transitioned via a ramp or other sloped surface.

4.10  The unmarked and poorly lit single-step transition of the Defendants' bus station was an unsafe and unreasonably dangerous trip hazard created by the Defendant.

4.11  Upon information and belief, the Defendants were actually aware of the condition of the single-step transition and, if they were not actually aware of it, the condition of the Defendants' single-step transition had existed long enough that the Defendants should have been aware of its condition.

4.12  At the time of and immediately prior to Ms. Handley-Miley exiting the bus station, the Defendants, through its agents and/or employees, had not taken steps to correct the unsafe condition of the single-step transition by eliminating the single step entirely or by properly illuminating and marking the walking surface and removing the glare inducing lighting.



4.13   The single-step transition was not noticeable to Ms. Handley-Miley, who was unaware of the single step because it was not marked and not properly illuminated.

4.14   There were no signs to let Ms. Handley-Miley know about the presence of the single-step transition at the Defendants' bus station.

4.15   It is foreseeable that a single-step transition which is not marked and not properly illuminated can cause pedestrians, like Ms. Handley-Miley, to trip.

4.16   It is foreseeable that a single-step transition which is not properly illuminated and marked would not be noticed by pedestrians exiting the bus station.

4.17   It is foreseeable that pedestrians who trip and fall could get seriously injured.

4.18   As Ms. Handley-Miley was exiting the bus station, her foot was caught by the single-step transition causing her to fall.

4.19   As a result of the fall, Ms. Handley-Miley suffered significant physical injuries including a fractured patella requiring surgical repair.

4.20   At the time of and immediately prior to Ms. Handley-Miley being injured at the bus station, the Defendants had not taken steps to remove or correct the unsafe condition of the single-step transition.

4.21   Walkway safety standards, such as ASTM F1637 - Standard Practice for Safe Walking Surfaces, require walkways to be properly illuminated and that illumination be glare free.

4.22   The Defendants' walkway did not comply with these standards because the illumination was less than one (1) foot-candle at the walking surface and the lighting put in place by the Defendants created glare into a pedestrian's eyes.

COPY

4.23 Ms. Handley-Miley was acting in a reasonable and prudent manner and had no reason to expect the Defendants, through its agents and/or employees, had not maintained its walkways in a safe condition and allowed its walkways to be a trip hazard.

4.24 Ms. Handley-Miley did not do anything or fail to do anything which caused or contributed to her injuries in any way.

4.25 At the time the Defendants' property was built as well as at the time Ms. Handley-Miley was injured, the Metropolitan Government of Nashville and Davidson County had adopted various codes materially affecting the health and safety of individuals and which are applicable to existing structures, including the following:

    a) The 2006 Edition of the International Building Code, specifically §§ 1006.1 and 1006.2 which require illumination of the means of egress at all times the building is occupied and require at least one (1) foot-candle of illumination at the walking surface; and

    b) The 2018 The 2018 Edition of the National Fire Protection Association Fire Code (NFPA 1), specifically § 14.1 which requires all existing properties to comply with the means of egress of the National Fire Protection Association Life Safety Code (NFPA 101); and

    c) The 2018 Edition of the NFPA 101 - Life Safety Code, specifically §§ 7.8.1.2 and 7.8.1.3 which require at least one (1) foot-candle of illumination at the walking surface at all times the building is occupied.

4.26 The single-step transition which caused Ms. Handle-Miley's injuries was not in compliance with these adopted codes and ordinances because the illumination was less than one (1) foot-candle at the walking surface.

COPY

## COUNT I
### (Negligence)

5.1 The Defendants owed Ms. Handley-Miley a duty of reasonable care to maintain its property in a reasonably safe condition, to inspect its property to ensure no unsafe conditions were present, to take corrective measures to remove unsafe conditions which could be remedied, and to provide a warning of unsafe conditions until such conditions are removed or remedied.

5.2 The Defendants, through their agents and/or employees, breached the above-listed duties to Ms. Handley-Miley, in the following ways:

   a. The Defendants failed to maintain its property in a reasonably safe condition by building a single-step transition at the exit/entrance to its bus station which was not marked and not properly illuminated creating a trip hazard;

   b. The Defendants failed to conduct a proper inspection of its property to discover the unsafe condition of the single-step transition;

   c. The Defendants failed to remove the unsafe condition by eliminating the single-step transition entirely, properly illuminating the single-step transition, and properly marking the single-step transition; and

   d. The Defendants failed to give Ms. Handley-Miley and others proper warning that there was a single-step transition at the location of her fall.

COPY

5.3 The breach by the Defendants was the cause in fact and proximate cause of the damages and injuries Ms. Handley-Miley suffered and constitutes negligence on the part of the Defendants.

5.4 As a direct and proximate result of the negligence of the Defendants the Plaintiff suffered significant physical, emotional, and economic damages more fully described later in this complaint.

## COUNT II
(Negligence Per Se)

6.1 As mentioned above, at the time the bus station was built and at the time of the incident described in this Complaint, the Metropolitan Government of Nashville and Davidson County had adopted the 2006 Edition of the International Building Code and the 2018 Editions of the NFPA 1 - Fire Code and the NFPA 101 - Life Safety Code with which the Defendants were required to comply.

6.2 The Defendants failed to correct the unsafe condition of the property, specifically the insufficient illumination of the single-step transition which caused Ms. Handley-Miley's fall and injuries.

6.3 The Defendants failed to comply with Tennessee law, safety standards, and local codes, and are, therefore, negligent and negligent *per se*.

6.4 As a direct and proximate result of the Defendants' negligence, the Plaintiff suffered substantial and painful injuries and economic losses more fully described later in this Complaint.



## DAMAGES

7.1   As a direct and proximate result of the Defendants' negligence, Ms. Handley-Miley suffered substantial emotional, physical, and economic injuries.

7.2   As a direct and proximate result of the Defendants' negligence, Ms. Handley-Miley has incurred substantial medical expenses for treatment of her injuries and may require future medical treatment and incur additional medical expenses.

7.3   As a direct and proximate result of the Defendants' negligence, Ms. Handley-Miley received painful injuries, has suffered both in body and mind, lost some of her ability to perform her usual activities, and lost some of her capacity to enjoy the pleasures of life.

**WHEREFORE, AND IN CONSIDERATION OF THE ABOVE, THE PLAINTIFF PRAYS:**

1.   That proper process issue and be served upon the Defendants, requiring them to answer this Complaint within the time required by law;

2.   That the Plaintiff be awarded a judgment against the Defendants in an amount to be determined by the trier of fact not to exceed the greater of the maximum amount permitted by law or $750,000.00 to compensate the Plaintiff for pain and suffering, any permanent injury and/or disfigurement, loss of capacity for the enjoyment of life, the cost of the Plaintiff's medical care services, pre- and post judgment interest, and the costs and discretionary costs in this cause;

3.   That this cause be tried by a jury; and,



4. That the Plaintiff have such other, further, and general relief as to which she is entitled.

Respectfully submitted,

MOSELEY & MOSELEY
ATTORNEYS AT LAW

BY: /s/ James Bryan Moseley
    James Bryan Moseley, No. 021236
Attorneys for Plaintiff

237 Castlewood Drive, Suite D
Murfreesboro, Tennessee 37129
615/ 254-0140
Fax: 615/ 634-5090
bryan.moseley@moseleylawfirm.com